IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ERIC LOPEZ,**

  **Plaintiff,**

v.                    No. CIV 02-0798 RB/LCS

**TOMMY ANDERSON, Hidalgo County Manager, BILL CAVALIERE, Hidalgo County Sheriff, and DOES 1 THOUGH 10, inclusive,**

  **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendants Cavaliere and Anderson's Motion for Summary Judgment on Plaintiff's Eighth and Fourteenth Amendment Claims (Doc. 23), filed on June 16, 2003, and Defendants Cavaliere and Anderson's Motion for Summary Judgment Regarding Plaintiff's Claims Brought Pursuant to NMSA 1978, §41-4-6 (Doc. 27), filed on August 1, 2003. Jurisdiction arises under 28 U.S.C. §1331. Having reviewed the submissions of the parties and the relevant law, the Court finds that these motions should be granted in part and denied in part.

**I. Background.**

Plaintiff (Lopez), a pro se litigant, asserts federal civil rights and state tort claims for a beating inflicted by fellow detainees at the Hidalgo County Detention Center (HCDC) in Lordsburg, New Mexico. Cavaliere, the Hidalgo County Manager, and Anderson, the Hidalgo County Sheriff,

answered on November 12, 2002.

Plaintiff alleges that on July 11, 2000, he was incarcerated at HCDC and sleeping when federal prisoners housed in an adjoining cell were able to unlock their cell door with a piece of wire or string. (Compl. at 3.) Through the same process, the federal prisoners were able to gain access to the cell where Lopez was sleeping. (*Id*.) Once inside, the federal prisoners beat Lopez so severely that he lost consciousness. (*Id*.) Jailers called Defendant Cavaliere and informed him that they had Lopez airlifted to a trauma center in Tucson, Arizona. (*Id*.)

While Lopez was on his way to the trauma center, Cavaliere responded to HCDC. (Compl. at 4.) On his way over, he stopped by his office and picked up two lengths of chain and a padlock. (*Id*.) Cavaliere questioned the inmates at HCDC about the incident. (*Id*.) One inmate gave a very detailed account and indicated that he could identify four of the federal inmates involved. (*Id*.) Cavaliere tested one of the cell door locks and was able to open it with a piece of wire. (*Id*.) Cavaliere then used the chains and padlock to secure the doors to the two cells involved in the incident. (*Id*.)

Several days later, the local newspaper ran an article concerning the incident. (Compl. at 4.) Cavaliere was quoted as saying that the residential location of the jail was unacceptable and that the Hidalgo County Sheriff's Department was working on plans to build a new sheriff's department and jail complex. (*Id*.) Lopez contends that Anderson and Cavaliere had long known that the cell doors did not offer appropriate security. (*Id*.)

As a result of the beating, Lopez suffers massive headaches and pain in his left and right shoulders. (Compl. at 4.) The right shoulder pain interferes with the use of his right hand. (*Id*.) Lopez has nightmares, fears that he will be beaten as he sleeps, and experiences extreme nervousness

and anxiety. (*Id*.) He has incurred substantial medical bills. (*Id*.)

Lopez contends that (1) Defendants violated his constitutional rights by failing to maintain the jail and allowing it to deteriorate to the point where it posed a safety risk; (2) Defendants violated his constitutional rights by failing to properly classify and segregate prisoners; (3) Defendants violated his constitutional rights by failing to maintain a trained staff adequate to provide safety and security to inmates; (4) Defendants were negligent by failing to follow federal and state requirements; (5) Defendants were negligent in hiring, training, and supervising staff; and (6) Defendants showed a reckless disregard for the safety of local inmates and knew that the cell doors did not offer appropriate security. (Compl. at 5.)

Lopez's former attorney sent letters to the Hidalgo County Manager and Hidalgo County Sheriff on September 11, 2000, informing them of his tort claims. (Compl. at 6.)

Anderson and Cavaliere answered on November 12, 1002, denying liability and asserting affirmative defenses.

In their motion on the §1983 Claims, Anderson and Cavaliere argue that (1) Counts 1, 2, and 5 are tort claims disguised as constitutional claims; (2) the Eighth Amendment is inapplicable because Lopez was a pretrial detainee; (3) they were not deliberately indifferent to Lopez's safety; (4) negligence claims are not cognizable under § 1983; and (5) punitive damages cannot be awarded against them in their official capacities. Anderson and Cavaliere have submitted the affidavit of Cavaliere stating that Lopez was detained on a probation violation at HCDC from June 30, 2000 to July 18, 2000.

In their motion on the state tort claims, Anderson and Cavaliere argue that the New Mexico Tort Claims Act (NMTCA) does not waive sovereign immunity for (1) the negligent hiring, training,

3

and supervision claims; (2) any design defect claim; and (3) the inmate-on-inmate assault claim. In support of this motion, Anderson and Cavaliere have submitted excerpts from Lopez's deposition, excerpts from the deposition of EMT David Whipple, Anderson's affidavit, and Cavaliere's affidavit.

Lopez has not responded to either of the motions. On January 22, 2004, an Order was issued warning Lopez of his duty to abide by the local rules and advising him of the potential consequences if he failed to respond to the motions for summary judgment. (Doc. 34.) The Order granted Lopez until February 23, 2004 to respond to the motions. (*Id*.) On February 4, 2004, Lopez submitted a letter requesting an extension of time to April 23, 2004 to respond, explaining he was trying to secure counsel, and informing the court that he had been hit by a car and was "a little slower." A copy of this letter has been forwarded to defense counsel.

The request for an additional extension of time is denied. I have advised Lopez of the consequences of failing to respond to the motions and afforded him an adequate opportunity to respond. The letter demonstrates that Lopez is able to understand and respond to court-imposed deadlines. Under these circumstances, it is appropriate to rule on the motions pursuant to FED. R. CIV. P. 56. *See Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002). Because the motions should be denied in part, I will apply the factors set forth in *Meade v. Grubbs*, 841 F.2d 1512, 1519-22 (10th Cir. 1988). *See Reed*, 312 F.3d at 1195-96.

**II.     Standard.**

As a pro se litigant, Plaintiff is entitled to a liberal reading of his pleadings and his submissions are held to a less stringent standard than applied to those drafted by a lawyer. *Gillihan*

*v. Shillinger*, 872 F.2d 935, 938 (10th Cir. 1989). However, I may not assume the role of advocate for a pro se litigant, and need not accept unsupported conclusory allegations as true. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Pro se litigants must follow the same rules of procedure that govern other litigants. *Oklahoma Gold & Federated Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 139 (10th Cir. 1994).

Anderson and Cavaliere have filed motions for summary judgment. Although I may consider the motions for summary judgment uncontested for lack of a timely response, I cannot grant summary judgment unless Anderson and Cavaliere have met their initial burden of production under Rule 56, by demonstrating that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. *See Reed*, 312 F.3d at 1194-95; FED. R. CIV. P. 56(c). When applying this standard, I must examine the record and makes all reasonable inferences in the light most favorable to Lopez. FED. R. CIV. P. 56(c).

### III. Analysis.

#### A. Whether Anderson and Cavaliere are entitled to summary judgment on the Eighth and Fourteenth Amendment Claims.

Anderson and Cavaliere contend that the Eighth Amendment is inapplicable because Lopez was a pretrial detainee.[1] Pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment's proscription against cruel and unusual punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Lopez v. LeMaster*, 172 F.3d 756, 759

---

[1] In fact, Lopez was not a pretrial detainee; he was detained on an alleged probation violation. (Cavaliere Aff. 4.) There is uncertainty as to whether a detainee awaiting a hearing on a probation violation is a pretrial detainee or whether he can be "punished" under the Eighth Amendment. *Palmer v. Marion County*, 327 F.3d 588, 592-593 (7th Cir. 2003).

n. 2 (10th Cir. 1999). For the purposes of a conditions of confinement claim, however, the distinction is purely academic.

Deliberate indifference is the recognized standard of protection afforded to both convicted prisoners and pretrial detainees under the Eighth and Fourteenth Amendments respectively. *County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998); *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). Under the deliberate indifference standard, Anderson and Cavaliere were required to provide Lopez with "'humane conditions of confinement by ensuring . . . the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee [his] safety.'" *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). Thus, the standard for a conditions of confinement claim is the same regardless of the constitutional basis and detention status.

In order to prevail on a conditions of confinement claim, a plaintiff must establish that (1) the condition complained of is "'sufficiently serious' " to implicate constitutional protection, and (2) jail officials acted with "'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). With respect to the first requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. Anderson and Cavaliere do not dispute that the beating was sufficiently serious to satisfy the first requirement. They argue that Lopez cannot meet the second component.

In order to satisfy the second requirement, the Supreme Court has explained that "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Farmer*, 511 at 835. The Court has described "deliberate indifference" as equivalent to

6

"recklessness," in which "a person disregards a risk of harm of which he is aware." *Id*. at 836-37.

Failure to protect prisoners from violence at the hands of other prisoners may amount to deliberate indifference. *See Farmer*, 511 U.S. at 833. Dangerous and unsanitary conditions caused by poor building maintenance may rise to the level of deliberate indifference. *See DeSpain v. Uphoff*, 264 F.3d 965, 977 (10th Cir. 2001). In order to prevail, Lopez must show that Anderson and Cavaliere were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew that inference. *Craig*, 164 F.3d at 495.

Anderson and Cavaliere argue that they were not deliberately indifferent and that Lopez's claims amount to mere negligence. Lopez has alleged considerably more than mere negligence. Specifically, he has alleged that Anderson and Cavaliere knew of the dangerous condition of the cell door locks, allowed the cell door locks to deteriorate to the point that dangerous inmates roamed the facility at will, failed to segregate dangerous prisoners from the general population, failed to follow safety guidelines, and failed to properly hire, train and supervise staff. Although Anderson and Cavaliere contest the allegations that they were aware of the danger posed by the cell doors and the federal prisoners, they have submitted no evidence to meet their summary judgment initial burden with respect to their motion for summary judgment on the constitutional claims. *See* FED. R. CIV. P. 56; *Gillihan*, 872 F.2d at 938. Because they failed to meet their initial burden, Anderson and Cavaliere's motion for summary judgment on the constitutional claims should be denied.

Anderson and Cavaliere argue that §1983 does not permit an award of punitive damages against them in their official capacities. A municipality is immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); Dill v. City of Edmond, 155 F.3d 1193, 1210 (10th Cir. 1998). A § 1983 action against a municipal official in his official

capacity it tantamount to a suit against the municipality. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995). To the extent that Lopez asserts punitive damage claims under § 1983 against Anderson and Cavaliere in their official capacities, the claims are barred.

Punitive damages, however, may be recovered from municipal officials sued under § 1983 in their individual capacities. In personal-capacity suits, punitive damages are warranted when the defendants' conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U. S. 30, 56 (1983); *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989)). Therefore, punitive damages are potentially available with respect to Anderson and Cavaliere in their individual capacities.

The Complaint does not specify whether Anderson and Cavaliere are sued in their official or their individual capacities. If a complaint fails to specify the capacity of a government official, the court must look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability. *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993). Because Lopez is pro se and he has sought punitive damages against Defendants, the Complaint should be construed as a suit seeking to impose both official and personal liability on Anderson and Cavaliere. *Gillihan*, 872 F.2d at 938. Lopez would be entitled to punitive damages on his § 1983 claim against the individual Defendants if he ultimately establishes that their conduct was undertaken with the requisite intent. The punitive damage claims against Anderson and Cavaliere in their official capacities should be dismissed.

**B.     Whether Anderson and Cavaliere are entitled to summary judgment on Plaintiff's state law claims.**

**1. Whether the NMTCA waives sovereign immunity for negligent hiring, training, and supervision of staff.**

Anderson and Cavaliere argue that the NMTCA has not waived sovereign immunity for claims of negligent hiring, training, and supervision of staff. Section 41-4-12 waives immunity "for personal [or] bodily injury . . . resulting from an assault [or] battery . . . when caused by law enforcement officers while acting within the scope of their duties." *Id.* As a county sheriff, Cavaliere qualifies as a law enforcement officer within the meaning of the NMTCA. NMSA 1978, § 41-4-3(D); *Methola v. County of Eddy*, 95 N.M. 329, 332, 622 P.2d 234, 237 (1981). "Battery by a third person as a result of an officer's negligence falls squarely within the narrow waiver of immunity under the Act." *Davis v. Doña Ana County*, 127 N.M. 785, 789, 987 P.2d 1172, 1182 (1999) (citing *Blea v. City of Espanola*, 117 N.M. 217, 220, 870 P.2d 755, 758 (Ct. App. 1994)).

Section 41-4-12 waives immunity for negligent supervision or training by a law enforcement officer that results in an assault or battery by a third party. *Weinstein v. City of Santa Fe*, 121 N.M. 646, 652, 916 P.2d 1313, 1319 (1996); *Ortiz v. New Mexico State Police*, 112 N.M. 249, 250-251, 814 P.2d 117, 118-119 (Ct. App. 1991). This waiver encompasses claims that law enforcement officers failed to protect persons who were beaten by other inmates while in police custody. *Methola*, 95 N.M. at 333, 622 P.2d 234 at 238. Section 41-4-12 waives sovereign immunity for the negligence claims against Cavaliere.

Anderson and Cavaliere have submitted no evidence to meet their summary judgment burden with respect to the negligent hiring, training, and supervision claims against Cavaliere. Therefore, the motion for summary judgment should be denied with respect to such claims.

The law enforcement waiver does not apply to Anderson because he is not a law enforcement officer. NMSA 1978, 41-4-3(D); *Dunn v. McFeeley*, 127 N.M. 513, 519, 984 P.2d 760, 766 (Ct. App. 1999). Anderson and Cavaliere correctly state that §41-4-6 does not waive immunity for claims of negligent hiring, training, and supervision. *Espinoza v. Town of Taos*, 120 N.M. 680, 683, 905 P.2d 718, 721 (1995); *Rubio ex rel. Rubio v. Carlsbad Mun. Sch. Dist.*, 106 N.M. 446, 448, 744 P.2d 919, 921 (Ct. App. 1987). Accordingly, Anderson and Cavaliere's motion should be granted with respect to Anderson because these claims are barred by sovereign immunity.

### 2. Whether immunity has been waived for the claim concerning the cell door locks.

Anderson and Cavaliere characterize the allegations relating to the cell door locks as a design defect claim. It is true that the waiver of liability for the operation and maintenance of buildings, public parks, machinery, equipment and furnishings contained in NMSA 1978, § 41-4-6[2] does not waive immunity for claims of negligent design of a building. *Rivera v. King*, 108 N.M. 5, 7, 765 P.2d 1187, 1189 (Ct. App. 1988). However, Lopez alleges that the incident was caused by "the unsafe, dangerous, defective condition of the cell doors." (Compl. at 3.) Lopez further alleges that Anderson and Cavaliere failed to maintain the facility and allowed it to "deteriorate to such disrepair" that it posed a safety risk. (Compl. at 5.) Clearly, Lopez has alleged a claim based on negligent maintenance and operation, and not a design defect claim.

Section 41-4-6 encompasses a waiver of immunity where due to the alleged negligence of public employees, an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government. *Bober v. New Mexico State Fair*, 111 N.M. 644, 653, 808

---

[2] Because §41-4-12 provides an independent waiver of immunity with respect to Cavaliere, the arguments concerning §41-4-6 relate only to Anderson.

P.2d 614, 623 (1991); *Castillo v. County of Santa Fe*, 107 N.M. 204, 205, 755 P.2d 48, 49 (1988). Maintenance and operation of a prison falls within the waiver afforded by Section 41-4-6. *Garner v. Dep't of Corr.*, 120 N.M. 547, 549, 903 P.2d 858, 860 (Ct. App. 1995) Lopez has alleged a claim based on an dangerous and defective condition of the cell door locks. Section 41-4-6 provides a waiver of sovereign immunity for such a claim so long as Anderson and Cavaliere knew or should have known of the danger and the danger was foreseeable. *Castillo v. County of Santa Fe*, 107 N.M. at 207, 755 P.2d at 51; *Callaway v. New Mexico Dep't of Corr.*, 117 N.M. 637, 642, 875 P.2d 393, 398 (Ct. App. 1994).

Anderson and Cavaliere have submitted evidence that prior to the incident, Defendants were not aware of a problem with the operation or maintenance of the cell doors. (Lopez Depo. at 14; 15; 16; 19; 21-22; Anderson Aff.¶ 7; Cavaliere Aff. ¶ 8.) Lopez has alleged that Cavaliere responded to the incident with lengths of chain and a padlock, that he tested a cell door lock with a piece of wire and was able to open it, and that Cavaliere publically stated that the location of the jail was unacceptable and that plans were underway to build a new one. (Compl. at 4.) The problem is that Lopez has submitted no evidence in support of these allegations. Indeed, Lopez testified that he had no personal knowledge of any prior incidents, and that he did not know the names of prisoners who told him that they told Cavaliere that the federal inmates were able to open the doors. (Lopez Depo. 14; 16; 19).

Anderson and Cavaliere have met their initial summary judgment burden with respect to the applicability of §41-4-6 and Lopez has submitted nothing to refute it. The motion for summary judgment on the state law claim concerning the cell door locks with respect to Anderson should be granted.

### 3. Whether immunity has been waived by Section 41-4-6 for assault on a detainee by other detainees.

This argument applies only to Anderson because the law enforcement waiver applies to Cavaliere. Where the alleged unsafe condition is caused by negligently allowing dangerous inmates to victimize the general prison population, § 41-4-6 provides a waiver of immunity. *Callaway*, 117 N.M. at 643, 875 P.2d at 399; *but see Archibeque v. Moya*, 116 N.M. 616, 621, 866 P.2d 344, 349 (1993) (where the danger is unique to a particular inmate to the point where it is a function of his classification, immunity is not waived by § 41-4-6). However, the question is whether Anderson and Cavaliere knew or should have known of the danger and the danger was foreseeable. *Castillo v. County of Santa Fe*, 107 N.M. at 207, 755 P.2d at 51; *Callaway v. New Mexico Dep't of Corr.*, 117 N.M. 637, 642, 875 P.2d 393, 398 (Ct. App. 1994).

Anderson and Cavaliere have submitted evidence that they had no notice that the federal inmates were dangerous. (Lopez Depo. at 14; 15; 16; 19; 21-22; Anderson Aff.¶¶ 3-6; Cavaliere Aff. ¶¶ 4-7.) Lopez testified that Anderson and Cavaliere did not know that the federal inmates were going to beat him up. (Lopez Depo. at 19.) Anderson and Cavaliere have met their initial summary judgment burden. Lopez has submitted nothing to the contrary. Anderson and Cavaliere' motion for summary judgment on the applicability of § 41-4-6 to the assault and battery claim should be granted as to Anderson.

### C. Whether summary judgment should be granted as a sanction for Lopez's failure to respond to the motions for summary judgment.

Summary judgment may be granted as a sanction for Lopez's failure to respond to the motions for summary judgment under certain circumstances. *See Reed*, 312 F.3d at 1195-96; *Meade*,

841 F.2d at 1519-22. The relevant factors are: "(1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant." *Reed*, 312 F.3d at 1195. In applying the *Meade* factors, I must be mindful that, "dismissal or other final disposition of a party's claim is a severe sanction reserved for the extreme case, and is only appropriate where a lesser sanction would not serve the ends of justice." *Id.*

In this case, there has been no showing of prejudice by Anderson and Cavaliere, no interference with the judicial process, and the culpability of Lopez was minimal in light of his circumstances. This is not a case where a severe sanction such as dismissal is warranted. The motions for summary judgment should not be granted for Lopez's failure to respond.

### IV.   Conclusion.

Defendants Anderson and Cavaliere's Motion for Summary Judgment on Plaintiff's Eighth and Fourteenth Amendment Claims should be denied. The punitive damage claims against Anderson and Cavaliere in their official capacities should be dismissed. Defendant Anderson and Cavaliere's Motion for Summary Judgment Regarding Plaintiff's State Tort Claims should be granted on the premises liability and assault and battery claims against Anderson, but otherwise denied. Summary judgment should not be granted as a sanction for Lopez's failure to respond to the motions for summary judgment.

**WHEREFORE,**

**IT IS ORDERED** that Defendants Cavaliere and Anderson's Motion for Summary Judgment on Plaintiff's Eighth and Fourteenth Amendment Claims (Doc. 23), filed June 16, 2003, is **DENIED.**

**IT IS FURTHER ORDERED** that the punitive damage claims against Defendants in their

official capacities are dismissed.

**IT IS FURTHER ORDERED** that Defendants Cavaliere and Anderson's Motion for Summary Judgment Regarding Plaintiff's Claims Brought Pursuant to NMSA 1978, §41-4-6 (Doc. 27), filed August 1, 2003, is **GRANTED ON THE PREMISES LIABILITY AND ASSAULT AND BATTERY CLAIMS AGAINST ANDERSON, BUT OTHERWISE DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**